## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CHRISTOPHER LIGHT,**<br><br>**Defendant.** | **Case No. 24-CR-195 (JEB)** |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Christopher Light be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence) and 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) of the federal bail statute. Because Mr. Light is charged with a violation of 18 U.S.C. § 924(c), there is a statutory presumption in favor of pretrial detention. *See* 18 U.S.C. § 3142(e)(3)(B). In less than twenty-four hours, Mr. Light brazenly robbed and attempted to rob four victims at gunpoint on three different occasions throughout Washington, D.C. and Maryland. The only reason that the attempted armed robbery was unsuccessful was because the victim managed to run away. The government requests that the Court consider the following points and authorities, as well as any other information presented at the detention hearing, and order Mr. Light detained pending trial.

## FACTUAL BACKGROUND

Since February 2024, law enforcement has been investigating a series of armed robberies and a carjacking that involve the use of a stolen white Audi SUV perpetrated by Mr. Light and other suspects. In summary, and as set forth in greater detail below, on the evening of February 4,

2024, two suspects used a white Audi SUV to rob an individual at gunpoint near the Wharf in D.C. Early the next morning, on February 5, 2024, a white Audi SUV was used to rob and carjack two individuals at gunpoint in Montgomery County, Maryland. Later that day, a white Audi SUV was used in an attempted robbery outside of a PNC Bank in Washington, D.C. The white Audi SUV was recovered later the same day. Inside the vehicle, in addition to some items stolen during the offenses, were dental prescriptions in the name of Christopher Light. Law enforcement confirmed that Mr. Light had a dental appointment on February 5, 2024, and obtained footage from the dentist office which reflected two individuals, consistent in appearance with the suspects in the attempted armed robbery, one of whom was identified as Mr. Light, and the other who was wearing a hat stolen from one of the victims of the armed carjacking. Additionally, law enforcement obtained a phone number for Mr. Light. A review of cell site location data for the phone number places Mr. Light's device in the area of these offenses at the date and time the offenses occurred.

Mr. Light is charged with one completed and one attempted armed robbery and one carjacking that occurred in Washington, D.C., and Maryland over the two-day period. There are no conditions or combination of conditions that can assure the safety of our community if Mr. Light is released. For the following reasons, the Court should order Defendant Light detained pending trial.

### *The February 4, 2024, Armed Robbery in Washington D.C.*

On Sunday, February 4, 2024, at approximately 6:45 p.m., an individual (Complainant 1) reported being robbed in the Wharf District of Washington, D.C. The Complainant recalled that two suspects ambushed him from a white Audi SUV. The driver was armed with a black rifle and the front seat passenger was armed with a handgun. The suspects took Complainant 1's

possessions, including an iPhone 15 Pro and two gold chains with pendants. The Suspects then entered the white Audi SUV and were last seen traveling Eastbound in the 600 block of Maine Avenue SW. The offense was captured on surveillance video as reflected in *Figure 1* below. Complaint 1 subsequently stated that he believed the handgun that was used had a blue laser sight.

<u>*Figure 1*</u>



As reflected in the surveillance video, one suspect, with a smaller build, climbs out of the passenger seat carrying a handgun and wearing black and white shoes. The other suspect, who is heavier set, exits the driver door carrying what appears to be a rifle-style firearm. The two men proceeded to rob Complainant 1 before fleeing in the white Audi SUV.

### *The February 5, 2024, Carjacking in Montgomery County Maryland*

Metropolitan Police Department (MPD) disseminated a Be on the Lookout ("BOLO") displaying a photo of the white Audi SUV that was used in the robbery of Complainant 1. In response, law enforcement in Montgomery County contacted MPD to report that early the following morning, at approximately 4:30 a.m., there had been a carjacking involving a similar vehicle and suspects. Specifically, on February 5, 2024, at approximately 04:30 hours at 956

Thayer Avenue in Silver Spring, Maryland, two individuals (Complainants 2 and 3) were seated inside a 2017 Mercedes E300 with Maryland tag 4EY4407. A white "Audi Truck" with all black tires pulled up behind them. Three black males wearing all black with ski masks exited the white Audi SUV and brandished firearms. The Complainants reported the one suspect had an AR-15 style rifle and the two other suspects had black handguns with blue laser sights. The suspects instructed Complainants 2 and 3 to get out of their vehicle and to turn over their belongings. The suspects stole a Gucci handbag, a Louis Vuitton wallet, Bulgari watch, a gold necklace, a black Mark Jacobs bag, three cellphones, and various identification cards and credit cards in the name of Complainants 2 and 3. Two of the suspects entered the Complainants' vehicle and drove off while the other suspect re-entered the white Audi SUV and also fled the scene. Complainant 2 provided law enforcement with the below photograph, taken before the carjacking, showing the hat and bag that were stolen during the carjacking.

*Figure 2*



On February 7, 2024, MPD located the 2017 Mercedes E300 with Maryland registration 4EY4407, which was stolen in Montgomery County on February 5, 2024, in a parking spot to the rear of 1429 Girard Street NW Washington, D.C. The vehicle was towed for processing. Surveillance video was recovered from the area around 1429 Girard Street NW. The surveillance video shows that shortly after the armed carjacking on February 5, 2024, at 4:40 a.m., the black Mercedes E300 and a white compact Audi SUV pull into the alleyway together. Both vehicles backed into parking spaces in the parking lot at 1429 Girard Street NW. The two vehicles with their headlights on are reflected in the surveillance footage still in *Figure 3* below.

*Figure 3*



Two suspects exited the Mercedes, and two suspects exited the white Audi SUV. Two of the suspects shook hands in front of the vehicles. The suspects then searched the stolen Mercedes by opening the doors and popping the trunk. After searching the Mercedes, they closed the doors and the vehicle was locked, as indicated by the headlights momentarily flashing. All four suspects entered the white Audi SUV and left the area.

**The February 5, 2024, Attempted Armed Robbery in Washington D.C.**

On Sunday, February 5, 2024, MPD Seventh District Officers responded to the 2000 Block of Martin Luther King, Jr. Avenue Southeast in reference to an attempted armed robbery of a

person at the PNC Bank. Complainant 4 reported that at approximately 3:00 p.m., he was making a withdrawal from the ATM at the PNC Bank. Complainant 4 reported that he was finishing his transaction by taking his debit card out of the ATM when he saw two Suspects exit the driver's seat and front passenger seat of a white Audi SUV, possibly a Q7 model. Both suspects approached the Complainant from behind, and one of them brandished and pointed a black firearm at the Complainant and said: "Don't move, give me that shit." Complainant 4 believed the firearm was a black Glock handgun with a small extended magazine. The suspects were unable to obtain any property from Complainant 4 as he was able to get away from the Suspects. As the vehicle drove off, Complainant 4 observed a temporary tag affixed to the rear of the white Audi SUV.

While Detectives were still on scene investigating, the Seventh District dispatcher advised that First District patrol officers located a vehicle matching the description of the suspect vehicle at approximately 5:30 p.m. The vehicle was originally observed by officers in the parking lot of 325 P Street SW backed into a parking space. Law enforcement attempted a traffic stop, but the vehicle fled from the patrol officers and successfully escaped. Officers obtained a tag number from the rear of that vehicle, Virginia paper temporary tag 81913E. The vehicle was reportedly involved in a hit-and-run while fleeing from police, at South Capitol Street and P Street SW. The vehicle sustained front-end damage to the bumper area.

### *Identifying Christopher Light*

At approximately 4:22 p.m. on February 6, 2024, officers again located the white Audi SUV in front of 2820 6th Street Northeast. The vehicle was found vacant and had front end damage to the bumper area and a rear Virginia paper temporary tag 81913E.

Upon inspecting the vehicle, law enforcement discovered that the VIN under the windshield and driver's side door jam was fraudulent. The VIN under the hood was found to be WA114AFY7N2108570. Law enforcement conducted a WALES/NCIC query of this VIN and discovered that it belongs to a 2022 Audi Q5, which was reported stolen in Jersey City, New Jersey on October 22, 2023.

Inside the vehicle, MPD recovered the following:

    a. DC tag JF6863 which was reported stolen off a 2023 Audi on January 15, 2024

    b. Gold chain necklace

    c. Cream MCM Wallet

    d. Black Louis Vuitton Wallet

    e. Maryland Identification card and miscellaneous cards in the names of Montgomery County carjacking victims (Complainants 2 and 3)

    f. Blue Eddie Bauer jacket

    g. Two prescriptions from Cedar Hill Dental at 2345 Martin Luther King Jr Ave SE, in the name of "Christopher E Light," with a date of birth of September 4, 2002, and an address of 1454 4th Street SW, a phone number of 202-212-9143, and dated February 5, 2024.

    h. Two cellular devices

    i. Backpack of miscellaneous men's clothing

    j. Black face mask

    k. IPP parking pass for February 5, 2024, at 10:06 a.m., at 1100 4th St SW "Waterfront Garages"

Based on the address on the dental prescriptions, law enforcement subsequently obtained surveillance video from the parking lot at 325 P Street Southwest, associated with the 1454 4th Street Southwest "Channel Square" apartment complex, for February 4, 2024, the date of the initial

Wharf armed robbery. Ten minutes after the robbery at the Wharf, the white Audi SUV pulled into the parking lot at approximately 6:50 p.m. and parked directly in front of 1454 4th Street Southwest.[1] The white Audi SUV then drove into the parking garage at 18:52 hours and made several circles around the garage for approximately three minutes before driving back to the entry/exit door. The vehicle had a visible D.C. hard tag of JF686. This is the same tag that was recovered from inside the white Audi SUV on February 6, 2024.

As units were on scene at 325 P Street Southwest, a Special Police Officer (SPO) approached MPD to inquire if they were looking into the "Audi SUV." The SPO identified three individuals who were associated with the white SUV, and who frequented the apartment complex. The SPO identified one of the individuals as Christopher "Wright," stated that "Wright" lived at 1454 4th Street, and provided a photograph to law enforcement of an individual who appeared to be Christopher Light. See *Figure 4* below. On the left is the photo provided by the SPO of "Christopher Wright". On the right is a MPD photo of Christopher Light.

*Figure 4*

 

---

[1] 1454 4th Street Southwest is 0.7 miles or 3 minutes from the Wharf.

Also based upon the dental prescription from Cedar Hill Dental Office found in the white Audi SUV, MPD reviewed surveillance footage from February 5, 2024, of a camera located at the intersection of Martin Luther King, Jr. Avenue Southeast reflecting the Cedar Hill Dental Office. Around 1:50 p.m., a white SUV, with the same body style as the recovered Audi SUV, turned into the alley that leads to the rear of 2405 Martin Luther King Jr Ave Southeast. Two individuals then exit the alley. One individual is wearing a black jacket with a hood, light blue jeans, and brown shoes and the other is wearing a blue coat, black hooded sweatshirt, light colored pants, and black and white shoes. Both individuals appear to be black males. Both subjects enter the Cedar Hill Dentist office's front door. See *Figure 5* below.

<u>*Figure 5*</u>



Around 2:49 p.m., the same two subjects exit the front door of Cedar Hill Dental. The individual wearing the black coat and light blue jeans appears to be holding papers in his left hand. The subjects walk back down Talbert Street Southeast and turn back into the alley. Minutes later, the same white SUV leaves the alley.

MPD responded to Cedar Hill Dental Office and met with an employee. The employee reported that Christopher Light is a patient at Cedar Hill Dental and had an appointment on

February 5, 2024, at 1:40 p.m. Christopher Light provided the Dental Office with an address of 1454 4th Street Southwest. The employee also reported Christopher Light was accompanied by another young male who remained in the waiting room during Christopher Light's appointment.

MPD reviewed CCTV footage from the interior of Cedar Hill Dental. The timestamp on the video is approximately 6 hours and 20 minutes ahead of real time. At 20:15:43 hours, two individuals enter the front door of Cedar Hill Dental. The first individual is wearing a black jacket with a Canada Goose logo on the sleeve, a black hooded sweatshirt, blue jeans with black designs, and brown shoes holding a baseball style hat in his hand. The second individual is wearing a blue jacket, gray sweatpants and black and white shoes. The individual with the blue coat immediately sits down in a waiting room chair. The individual in the black jacket proceeds to the front desk and is given a clipboard and then he sits down next to the individual in the blue jacket. The individual with the black jacket gives the baseball hat to the subject with the blue jacket.

At timestamp 20:33:43, the individual in the black jacket stands up and walks through a door to exit the waiting area while the remaining individual with the blue jacket remains in the waiting area. Then at timestamp 21:07:23, the individual in the black jacket exits the exam room area and approaches the check-out desk. The individual's face is fully visible, but he pulls a ski mask up over his face while interacting with an employee. Below in *Figure 6* is a screenshot of the individual in the black jacket as he exits the exam room area.

*Figure 6*



Then, at timestamp 21:09:29, the individual in the black jacket walks back into the waiting room area to rejoins the second individual. Both individuals exit the dentist's office together. See the photograph on the left in *Figure 7* below. Notably, the hat on the individual in the blue jacket is consistent in appearance with the hat stolen from Complainant 3 earlier that day in Montgomery County. See the photograph on the right of Complaint 3 in *Figure 7* below.

<u>*Figure 7*</u>

11



The Cedar Hill Dentist employee confirmed that the individual wearing the black coat on the CCTV was Christopher Light. The employee further stated that it is common practice to give the prescriptions directly to the patient and the office would not give prescriptions to a third party.

MPD also reviewed CCTV footage from the ATM at the PNC bank. The CCTV footage confirmed Complainant 4's account. At approximately 15:03:18 hours, Complainant 4 walks up to the ATM and begins his transaction while a white Audi SUV stops on the street behind Complainant 4.

*Figure 8*



At approximately 15:03:40 hours, while Complainant 4 is engaged in his transaction, and a Suspect wearing a black jacket, blue jeans, and a black facemask approached the Suspect from his left side and pointed a firearm at Complainant 4. The firearm appeared to have a black receiver, with a tan or brown slide. Simultaneously, a second Suspect wearing a blue jacket, gray sweatpants, and black and white sneakers approached Complainant 4 from behind. Complainant 4 immediately began running towards Martin Luther King Jr. Avenue Southeast and was briefly followed by the Suspects until they turn around and re-entered the Suspect vehicle and drove towards Martin Luther King Jr Avenue SE. A screenshot of the CCTV footage showing the Suspect pointing a firearm at Complaint 4 is below in *Figure 9*.

<u>*Figure 9*</u>



Notably, Cedar Hill Dentist is approximately 0.3 or 0.4 miles, or approximately 2 or 3 minutes by car, away from the PNC bank where the attempted robbery occurred. From the video footage, the individuals left the dentist's office at 2:55 p.m., and the PNC robbery, involving suspects dressed consistently with the individuals in the Cedar Hill Dentist CCTV, occurred around 3:05 p.m.

Law enforcement identified Mr. Light's phone number through police reports and querying law enforcement databases. Law enforcement discovered that the subscriber information for the phone number returned to Mr. Light's mother. Mr. Light's phone number is also connected to an Instagram account that law enforcement knows to belong to Mr. Light. Law enforcement obtained a search warrant for subscriber information, call detail records, and historical cellphone tower locations associated with Mr. Light's phone number from February 4, 2024, through February 5, 2024. A preliminary review of the historical cellphone tower locations places the device, with the phone number associated with Mr. Light, in the vicinity of these three offenses. Specifically, Mr. Light's phone number location data puts his device in the vicinity of the armed robbery at the

14

Wharf on February 4, 2024 and back in the vicinity of 1454 4th Street Southwest immediately after the robbery, consistent with the surveillance footage.

*Figure 10*



The data puts Mr. Light's device in the vicinity of the carjacking in Montgomery County on February 5 and abandoning of the carjacked vehicle in the 1400 block of Girard NW.

*Figure 11*



Lastly, the data puts Mr. Light's device in the area of the dentist's office and attempted armed robbery at 2000 Martin Luther King, Jr. Avenue Southeast, on February 5, 2024.

*Figure 12*



### *Mr. Light's Arrest and Connection to 1454 4th Street Southwest*

Mr. Light was arrested on March 25, 2024, when Deputy United States Marshals (DUSMs) were in the area of 4th Street Southwest in Washington, D.C. attempting to locate Kharris Akinola to arrest him for unrelated parole violations. Mr. Akinola was affixed with a GPS monitoring device so the DUSMs knew that he was in the area.

At approximately 7:55 a.m., the DUSMs observed an individual exit the front door of 1454 4th Street Southwest, Washington, D.C. The DUSMs positively identified the individual as Mr. Akinola. After exiting the residence, Mr. Akinola walked through the parking lot in front of the residence with his keys in his hand. After confirming that the individual was Mr. Akinola, the DUSMs placed Mr. Akinola under arrest. Search incident to arrest recovered a firearm in Mr. Akinola's waistband.

Immediately after Mr. Akinola's arrest, law enforcement observed Mr. Light inside 1454 4th Street Southwest, in the apartment that Mr. Akinola exited prior to his arrest. Law enforcement knew that Mr. Light was a suspect in the series of offenses described above. Shortly after Mr. Akinola was arrested, Mr. Light exited the apartment and was arrested and charged in relation to these offenses in D.C. Superior Court.

After Mr. Akinola and Mr. Light were arrested, law enforcement secured the 1454 4th Street Southwest residence and obtained a search warrant for the property. Mr. Light has previously reported 1454 4th Street Southwest as his residence. In December 2021, Mr. Light was arrested for Carrying a Rifle Without a License, as further described below, and reported 1454 4th Street Southwest to MPD as his address. Additionally, on April 2, 2022, Mr. Light was involved in a reported domestic disturbance at 1454 4th Street Southwest, where he was located with both his mother and brother. A query of law enforcement databases lists 1454 4th Street Southwest as the most current address for Christopher Light. Further, as noted above, an SPO at the apartment complex identified an individual named "Christopher Wright" as being associated with the white Audi SUV and confirmed that "Wright" lived at 1454 4th Street Southwest. Given how similar the names are, law enforcement believes it is possible that the SPO either mistook the name Christopher Light for the name Christopher Wright or that Mr. Light provided a fictitious name.

After obtaining a residential warrant, inside the residence, law enforcement found a black Anderson Manufacturing model AM-15, multi-caliber pistol, bearing serial number 20062443 located in a freezer along with a black magazine containing fifty rounds of ammunition.

*Figures 13 and 14*

 

The firearm is similar in appearance to the AR-style rifle used in two of the three offenses.

*Mr. Light's Criminal History*

Mr. Light has one previous adult conviction.

On December 31, 2021, MPD officers were conducting firearm interdiction due to the surge in violent crime in the area. Officers pulled into the parking lot of 4635 South Capitol Street Southeast and observed a dark gray Infiniti idling with no driver. The Infiniti had no front tags, and tints that appeared darker than the legal limit allowed in the District of Columbia. The front passenger, and sole occupant of the vehicle, Mr. Light, appeared to be shuffling around as soon as he saw the officers. Officers approached Mr. Light and observed him smoking a marijuana cigarette. Officers tapped the window of the vehicle to address the numerous concerns. The officers then observed a bulge in Mr. Light's crotch area and that Mr. Light was clenching his legs together tightly.

Officers gave Mr. Light numerous commands to open the door, but Mr. Light refused. Officers told Mr. Light that if he did not comply, they would break the vehicle's window. Officers then broke the window and removed Mr. Light from the vehicle. Directly underneath where Mr. Light was sitting was a black AR-style handgun.

The firearm recovered was a black AR-style "Ghost Gun" with one round in the chamber and an additional fourteen round in the forty-five round capacity magazine. On March 25, 2022, Mr. Light pled guilty to Attempted Possession of a Large Capacity Feeding Device and Attempted Carrying a Pistol Without a License Outside a Home or Business. He was sentenced to 180 days execution of sentence suspended as to all. His conviction was set aside under the Youth Rehabilitation Act when he successfully completed probation on April 13, 2023.

### *Procedural History*

On March 26, 2024, Mr. Light was charged by complaint in D.C. Superior Court with one count of Armed Robbery and one count of Assault With Intent To Commit Robbery While Armed. Then, on April 23, 2024, the grand jury in the District Court for the District of Columbia returned a six-count indictment against Mr. Light. The indictment charged Mr. Light with one count of Armed Robbery in violation of 22 D.C. Code §§ 2801, 4502, one count of Possession of a Firearm During a Crime of Violence in violation of 22 D.C. Code § 4504(b), one count of Carjacking in violation of 18 U.S.C. § 2119(1), one count of Using, Carrying, and Possessing a Firearm During and in Relation to and in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c)(1), one count of Attempt to Commit a Robbery While Armed in violation of 22 D.C. Code §§ 2802, 4502, 1801, and one count of Possession of a Firearm During a Crime of Violence in violation of 22 D.C. Code § 4504(b).

At an initial appearance held on April 26, 2024, the Government orally moved for pretrial detention, and the defendant was ordered held without bond pending a detention hearing to be held on May 2, 2024.

### **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Where, as here, the defendant is charged with a violation of Section 924(c), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B).

A review and understanding of the facts and circumstances in this case demonstrates that there are no conditions or combination of conditions that would ensure the safety of the community were Mr. Light be released. Therefore, this Court should detain Mr. Light pending trial.

I.    **The Nature and Circumstances of these Offenses Merits Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention. Mr. Light participated in one armed robbery, one carjacking, and one attempted armed robbery in less than twenty-four hours. His victims were all strangers. The only reason that the armed robbery at the PNC ATM was unsuccessful is because the victim managed to run away. Two of these offenses are captured on video and show Mr. Light actively engaged in the attacks. Furthermore, in each of these three instances, Mr. Light is alleged to have brandished a firearm and pointed the firearm at the victims. Video of two of the offenses shows Mr. Light pointing a firearm at the victims.

Armed carjackings and armed robberies are extremely dangerous offenses. As described by Judge Berman Jackson in *United States v. Lee*, "[t]he best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people— could be killed or seriously injured." 195 F.Supp. 3d 120, 129 (D.D.C. 2016) (finding the nature and circumstances weighing heavily in favor of detention in a case where a single Hobb's Act robbery was charged).

Mr. Light over the course of twenty-four hours placed four different members of our

community in fear for their lives. What appears to be a reckless spree for Mr. Light represents years of terror for these innocent victims. They will not soon forget being threatened with firearms and robbed (or almost robbed).

As such, the nature and circumstances of this offense weighs heavily in favor of detention.

## II.    <u>The Weight of the Evidence Against the Defendant is Formidable.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[2] The Government's case against Mr. Light is very strong.

These offenses all occurred in temporal proximity to each other, and all involve the use of a white Audi SUV that has since been tied to Mr. Light. The armed robbery and carjacking that occurred on February 4th and 5th both involve the use of a rifle and a handgun with a blue laser sight. When law enforcement found the white Audi SUV and searched it, the vehicle contained items that had been reported stolen by Complainants 1, 2, and 3 and prescription dental medication in Mr. Light's name. Surveillance footage and an employee from the dental office confirmed that Mr. Light had a dental appointment on February 5, 2024 at 1:40 p.m., and that minutes after Mr. Light left the office, Mr. Light and another individual, attempted to rob Complainant 4 at the PNC ATM. The individuals in the dental office and the individuals who attempted to rob the PNC ATM

---

[2] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."  2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."  *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

were wearing the same clothing and were driving in a white Audi SUV.

Furthermore, a review of the historical cellphone tower locations for a phone number associated with Mr. Light places the device in the vicinity of these three offenses at the times these offenses took place. Specifically, Mr. Light's phone number location data puts his device in the vicinity of the armed robbery at the Wharf on February 4, 2024, in the vicinity of the carjacking in Montgomery County on February 5, abandoning of the carjacked vehicle in the 1400 block of Girard, and in the vicinity of the attempted armed robbery at 2000 Martin Luther King, Jr. Avenue Southeast, on February 5, 2024.   It beggars belief that Mr. Light's phone just happened to be at the location of each of these offenses when someone else committed these crimes with a white Audi SUV which parked outside of his apartment and later contained his dental prescriptions. Either Mr. Light is the unluckiest person in the world, or he committed each of these dangerous crimes.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10.

This is such a case, and Mr. Light should be detained pretrial.

## III.    The Defendant's History and Characteristics Merit Detention.

The third factor for the Court to consider is Mr. Light's history and characteristics. Mr. Light is twenty-two and has one prior conviction for Attempted Carrying a Pistol Without a License and Attempted Possession of a Large Capacity Ammunition Feeding Device. This

conviction was set aside under D.C. Code's Youth Rehabilitation Act after Mr. Light successfully completed probation. In this case, Mr. Light was found in possession of an AR-Style "Ghost Gun" loaded with a 45-round capacity magazine.

While Mr. Light reportedly successfully completed his probation for his 2022 gun conviction, his actions in this instant case demonstrate that his previous conviction did nothing to deter his violent and repetitive conduct. Moreover, it suggests that Mr. Light cannot be trusted on pretrial release. Furthermore, when Mr. Light was arrested and law enforcement searched his apartment, an address connected to Mr. Light in numerous ways, law enforcement found a rifle style firearm and loaded with ammunition in the freezer. Based on his 2022 conviction, the current offenses with which Mr. Light is charged, and the firearm found in the freezer of his home, Mr. Light clearly has access to firearms and if released, there is a real risk that he will return to victimizing strangers with guns. Therefore, the third factor, the history and characteristics of the person also weighs in favor of detention.

## IV.    <u>Mr. Light Presents a Danger to Our Community.</u>

The fourth and final factor, danger to any person or the community posed by Mr. Light's release, similarly weighs in favor of detention. Mr. Light has the ready ability to secure firearms and no compunction about threatening our community with them.

As noted, one of the charges in this case gives rise to a presumption that there is no combination of conditions that can assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(B); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (establishing that the indictment alone triggers the rebuttable presumption). This rebuttable presumption underscores that Congress sought to treat such crimes extremely seriously, particularly in light of the

mandatory-minimum terms of incarceration accompanying such transgressions. And this presumption is particularly warranted given the repetitive and violent nature of Mr. Light's crimes.

Mr. Light's first robbery—of the individual at the Wharf—occurred on a Sunday evening as individuals sat eating dinner in a restaurant feet away. All of these individuals watched as Mr. Light and his accomplice robbed a man at gunpoint, sharing that victim's terror. Mr. Light knew these people were there. He sat in the white Audi for several minutes waiting for his chance. Despite knowing that multiple people could see him, in the heavily trafficked Wharf neighborhood, Mr. Light sprang from his car with a firearm and robbed someone. Every one of the witnesses to Mr. Light's crime left dinner feeling less safe.

Mr. Light was not done. It wasn't enough just to terrify one man, he targeted more. Mr. Light drove into Maryland and sprang upon two other unsuspecting victims. These victims had just spent the evening celebrating and were sitting in their car when Mr. Light and others threatened them with firearms, robbing them of their possessions and then their vehicle.

Mr. Light was still not done. In broad daylight, later that day, after going to the dentist's office, Mr. Light decided he needed to rob someone else. Mr. Light and accomplice attacked a man from behind who, through a combination of luck and will, was able to escape. He did this just down the street from the dentist's office he had been in, unmasked, minutes before.

Mr. Light's actions were as brazen as they are dangerous. Mr. Light presents far too grave a danger to our community to be released.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Light pending trial on these charges.

Respectfully submitted,


MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:        _/s/ Katherine M. Toth_
Katherine M. Toth
Ohio Bar No. 100082
Special Assistant United States Attorney
Cameron A. Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-252-2406
Katherine.Toth@usdoj.gov